**APOLLO PLAZA LTD.,**
Appellant/Garnishee–
Defendant,

v.

**ANTIETAM CORPORATION and Tere-**
**sa Penny, Appellees/Plaintiffs,**

v.

**Alex Shiriaev, Appellee/Defendant**
**and Third–Party Plaintiff,**

v.

**National City Bank,**
Appellee/Garnishee–
Defendant,

and

**Skywalker Communications of Indiana,**
**Inc., Sky Marketing and Communica-**
**tions, Inc., and Sky Finance of**
**Indiana, Inc., Appellees/Intervenors.**

No. 02A03–0011–CV–400.

Court of Appeals of Indiana.

July 12, 2001.

---

John C. Theisen, Matthew M. Hohman, Barnes & Thornburg, Fort Wayne, Indiana, Attorneys for Appellant.

Charles E. Davis, Swift & Finlayson, Fort Wayne, Indiana, Attorney for Appellees.

## OPINION

KIRSCH, Judge

Apollo Plaza Ltd. ("Apollo") appeals the trial court's judgment on proceedings supplemental entered in favor of Antietam Corporation and Teresa Penny (collectively "Antietam") following a jury verdict against Alex Shiriaev ("Shiriaev"). Apollo raises five issues for our review, which we consolidate and restate as: whether the trial court erred by piercing Apollo's corporate veil in proceedings supplemental to hold it liable for the obligations of Shiriaev.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 1992, Thomas Penny ("Tom") leased premises from Shiriaev for the operation of his construction business, which he owned as a sole proprietor. Tom borrowed money from Shiriaev in July 1994 in exchange for a security interest in Tom's Bobcat. In October 1994, the Bobcat was stolen from Tom's business premises.

In January 1995, Teresa Penny ("Teresa"), Tom's wife, incorporated Antietam to manage the construction operations. She was the sole officer, director, and shareholder, with Tom working as general manager. Construction equipment assets from Tom's sole proprietorship were conveyed to Antietam, and Antietam conducted business from the same leased premises occupied by Tom. Without prior notice, on January 14, 1996, Shiriaev locked Antietam out of its office and denied the Pennys access to Antietam's business files, office equipment, construction materials, and tools. In exchange for being allowed to reenter the property, Shiriaev demanded the Pennys assign insurance proceeds from the insurance claim filed for the missing Bobcat.

Antietam and Teresa filed a conversion complaint against Shiriaev. Shiriaev filed a third-party complaint against Tom, asserting *inter alia* that the Bobcat was stolen, that Tom was negligent in failing to maintain appropriate insurance, and that he should be declared the owner of insurance proceeds for the Bobcat. After private investigators located the Bobcat at the residence of Shiriaev's brother, Shiriaev dismissed his claims regarding the Bobcat.

In August 1998, a jury returned verdicts on the various claims asserted by the parties. The trial court entered judgment in favor of Antietam in the amount of $133,857 and an additional amount of $3,000 for Teresa. Following the judgment, the trial court awarded Antietam legal fees in the amount of $40,393.17. We affirmed the trial court's judgment in *Shiriaev v. Antietam Corp.*, No. 02A05–9907–CV–312, 733 N.E.2d 542 (Ind.Ct.App.2000), *trans. denied.*

In November 1999, Antietam instituted proceedings supplemental against Shiriaev, naming National City Bank, Apollo, Sky-

walker Communications and other Skywalker corporations owned or controlled by Shiriaev, as garnishee-defendants. National City Bank filed positive answers to Antietam's interrogatories stating that one of its accounts was titled "Alex Shiriaev d/b/a Apollo Plaza Limited." *Record* at 362, 385. The trial court froze the account proceeds in the amount of the judgment pending a determination of Shiriaev's ownership interest in the funds. The trial court conducted a hearing to determine the issue of ownership of the frozen account. Specifically, the issue presented to the court during the hearing, and briefed by the parties in their post-hearing briefs, was whether Apollo's corporate veil should be pierced to pay the judgment against Shiriaev. The trial court entered its judgment piercing the corporate veil of Apollo and thereby permitting Antietam to garnish the amount of $177,250.17 to satisfy its judgment against Shiriaev. It is from this order that Apollo now appeals.

## DISCUSSION AND DECISION

Initially, Apollo raises two threshold arguments. Apollo first contends that it was not properly named a party to the proceedings. It bases this assertion on an entry in the CCS that dismisses prior proceedings supplemental brought by Antietam. However, Apollo appeared and presented argument at every hearing in this case and acknowledged that it was a garnishee-defendant. Because it consented to the proceedings and failed to object once the court determined that it was a garnishee-defendant, Apollo has waived this issue and cannot now complain that it was not a proper party to the action pending against it. *See Abbey Villas Development Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 102 (Ind.Ct.App.1999), *trans. denied* (party may not claim error in trial procedure when it acquiesces that procedure). Apollo next claims, without citing any authority, that Antietam was not entitled to initiate proceedings supplemental because Antietam did not complete execution upon Shiriaev's realty and personal property. We conclude that any error was invited by Apollo based upon its agreement that the trial court first determine ownership of the assets held in the frozen bank account prior to such execution. *See Indiana Dept. of Ins. v. Zenith Re–Insurance Co., Ltd.*, 596 N.E.2d 228, 230 (Ind. 1992) (citing *Nesses v. Specialty Connectors Co., Inc.*, 564 N.E.2d 322, (Ind.Ct.App. 1990); *Stolberg v. Stolberg* 538 N.E.2d 1, 5 (Ind.Ct.App.1989) (party cannot take advantage of an error that it commits, invites, or which is the natural consequence of its own neglect or misconduct)).

We turn now to the merits of Apollo's claim that the trial court erred in piercing the corporate veil of Apollo during proceedings supplemental. Apollo specifically contends that the trial court erroneously held it liable for the individual liability of Shiriaev when Apollo had no relationship with Antietam. Apollo refers to the action taken by the trial court as an "outside reverse piercing" claim. Essentially, Apollo argues that the trial court erroneously held it liable for the debt of Shiriaev, a minority shareholder.

In reviewing this contention, we are guided by our well-established standard of review. An appellate court will not disturb the trial court's judgment if evidence of probative value was presented that supports the trial court's findings of fact and conclusions of law. *Lambert v. Farmers Bank*, 519 N.E.2d 745, 747 (Ind. Ct.App.1988). We may not reweigh the evidence presented at trial or evaluate witness credibility. *Id.* If conflicting evidence is presented during the course of the proceedings, the fact-finder is charged with resolving the conflicts. *Id.*

In *Lambert,* we held that the trial court did not err in determining that the corporation, Lambert Enterprises, Inc., was the alter ego of its president William Lambert and allowing the president's creditors to reach corporate assets to satisfy his personal debts. The evidence tended to establish that Lambert generally governed all corporate affairs, exercised extensive control over the corporation, owned all corporate stock, treated corporate assets as his own, and sought to place his assets beyond the reach of his creditors by titling the assets in the name of the corporation. In affirming the trial court's decision to disregard the separate legal entity, we stated:

> "As a general rule, Indiana courts are reluctant to disregard corporate identity and do so only to protect third parties from fraud or injustice when transacting business with a corporate entity. Likewise, the separate existence of a corporation may be disregarded to prevent injustice when a third party transacts business with an individual who fraudulently uses a corporation as a shield from liability."

*Id.*

■ Here, the trial court conducted a hearing to determine the ownership of assets held by Apollo prior to deciding that Shiriaev had misused the corporate form to deceive others. The evidence before the court established that Shiriaev sought to use Apollo as a shield from liability. The trial court determined that Apollo was the alter ego of Shiriaev and that the corporate entity should therefore be disregarded. In protecting Antietam from the fraud and unfairness that would flow from Shiriaev's actions, the trial court in pertinent part specifically stated in its conclusions of law:

> "10. This Court further concludes that Apollo Plaza, Ltd. is not operated as a separate entity from the other corporations in which the Shiriaevs are shareholders, directors, or officers. There is a 'common identity' or 'single business enterprise' here which 'include the intermingling of business transactions, functions, property, employees, funds....' *Eden United, Inc. v. Short,* 573 N.E.2d 920, 933 (Ind.Ct.App.1991).

> 11. The testimony of Alex Shiriaev was, at best, evasive. As a result, this Court concludes that the testimony of Alex Shiriaev was, for the most part, not credible. This is especially true with regard to his 'resignation' as President of Apollo Plaza, Ltd., in favor of George Shiriaev. This Court concludes that such resignation was merely a ruse designed to convince this Court that Alex Shiriaev no longer controls the corporate entities held by the Shiriaevs. The timing of such transition is all too convenient. Alex Shiriaev has not substantiated any health problems, and Alex Shiriaev's health appeared well throughout a tedious and highly charged nine-day jury trial. This Court remains convinced that Alex Shiriaev plays, at the very least, a pivotal rule [sic] in the conduct of business operations by the Shiriaev family in the various aforementioned corporations or business entities. This Court further concludes that Apollo Plaza, Ltd., was an instrument organized for the mere personal manipulation of Alex Shiriaev.

> 12. [I]t would be unfair to [Antietam] ... to permit Alex Shiriaev to escape personal liability for the judgment against him by use of Apollo Plaza, Ltd., as a corporate veil. This Court furthermore concludes that the amounts placed in the name of Apollo Plaza, Ltd., in the National City bank account ... were placed there primarily to escape Alex Shiriaev's personal liability, and to per-

mit such avoidance to occur would be unfair to [Antietam] in this cause."

*Record* at 253.

Based upon the foregoing, the trial court properly exercised its equitable and discretionary powers to ignore Apollo's corporate existence. Under the circumstances of the present case, a contrary decision by the trial court would have allowed Shiriaev to further a fraud by using Apollo as the means to hide assets in order to avoid paying the legal judgment rendered against him.

Finally, the trial court correctly concluded that Antietam met its burden of proof in seeking to disregard the corporate identity of Apollo and did not err in finding that Antietam adequately proved "that [Apollo's] corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of [Shiriaev] and that the misuse of the corporate form would constitute a fraud or promote injustice." *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind.1994) (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994)). In exercising its equitable powers to pierce a corporate veil, a court engages in a highly fact-sensitive inquiry. *Winkler*, 638 N.E.2d at 1232 (Ind.1994). "As a general statement, the factors to be considered include whether the corporate form has been adhered to, whether corporate assets are treated as such or as personal assets, and whether there has been an attempt to deceive third parties." *Id.* (citing *Hinds [v. McNair]*, 235 Ind. [34,] 40–41, 129 N.E.2d [553,] 560 (1955); *Magic Packing [Co. v. Stone–Ordean]*, 158 Ind. [538,] 541, 64 N.E. [11,] 12 (1902); *Lambert*, 519 N.E.2d at 748; *Extra Energy Coal Co. v. Diamond Energy*, 467 N.E.2d 439, 441–42 (Ind.Ct.App.1984)). In its conclusions of law, the trial court found in relevant part as follows:

"6. This Court concludes that, as a matter of law, there has been an absence of corporate records properly kept for Apollo Plaza, Ltd.

7. This Court further concludes that Apollo Plaza, Ltd., has paid the personal obligations of Alex Shiriaev, specifically, attorney's fees which were personally owed by him to his counsel, Robert Benson. This transaction constitutes payment by the corporation of Alex Shiriaev's individual obligations.

8. This Court also concludes that there has been a commingling of assets between the various corporations in which the Shiriaev family have been shareholders, directors, and corporate officers.

9. In addition, [t]his Court concludes that there has been a failure to observe corporate formalities, especially in keeping proper records and documenting loans from the corporation to Alex Shiriaev."

*Record* at 252.

The Record supports the findings of the trial court, and the court did not err in entering judgment in the proceedings supplemental. Affirmed.

SHARPNACK, C.J., and MATTINGLY–MAY, J., concur.